IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JHUMAR RAY WAITE,<br><br>    Plaintiff,<br><br>  vs.<br><br>HONOLULU LIQUOR COMMISSION;<br>JACOB FEARS, in his individual and official<br>capacities; GLEN NISHIGATA, in his<br>individual and official capacities; and<br>CATHERINE FONTAINE, in her individual<br>and official capacities,<br><br>    Defendants. | Civil No. 23-00356 MWJS-RT<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS WITH PARTIAL LEAVE TO<br>AMEND |

**<u>INTRODUCTION</u>**

Plaintiff Jhumar Ray Waite is a former investigator for the Honolulu Liquor

Commission (HLC).  He is also a gay Filipino man.  Waite alleges that during his

employment with HLC, he was subjected to discriminatory comments and employment

actions by his former supervisors based on his sexual orientation, race, and national

origin.  Waite brought this lawsuit against HLC and his former supervisors, asserting

that their conduct violated federal and state law.

Before the Court is a motion for judgment on the pleadings, ECF No. 32, in which

Defendants contend that Waite's complaint does not plausibly state any claim for relief.

Waite acknowledges some deficiencies and contests others, and he ultimately requests

leave to amend any claims that are found lacking.  For the reasons set forth below, the Court concludes that much of the complaint does not plausibly state a claim for relief, but that Waite should have an opportunity to cure some of those deficiencies. Accordingly, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion and GRANTS Waite partial leave to amend the complaint.  The Court lays out the particulars of which claims survive and which may be amended at the end of this order.

## BACKGROUND

### A.    First Amended Complaint's Factual Allegations

The governing pleading is the First Amended Complaint (FAC), filed on June 29, 2024.  ECF No. 28.  The FAC sets forth Waite's factual allegations and claims as follows.

Waite began working as an investigator for HLC in August 2022.  *Id.* at PageID.165 (¶ 15).  During his employment, he was the only gay employee within the agency.  *Id.* (¶ 17).  From the start, Waite was subjected to "discriminatory treatment, including harassment, taunting, and alienation" by supervisors Jacob Fears and Glen Nishigata.  *Id.* at PageID.166 (¶ 18).  In one instance, Fears "required" Waite to "enter an LGBTQ+ establishment under the pretext of acting as a translator for gay patrons."  *Id.* (¶ 20).  In another, Nishigata "shouted derogatory and offensive comments at transgender sex workers while in a car with" Waite.  *Id.* at PageID.167 (¶ 25).  Fears also made homophobic and racist comments in Waite's presence and mocked Waite's

accent. *Id.* at PageID.166 (¶¶ 19, 21-22). And Nishigata refused to properly train Waite because of his sexual orientation. *Id.* (¶ 24).

Waite filed an internal complaint with HLC about the discrimination he was experiencing. *Id.* at PageID.167 (¶ 28). Rather than placing the accused supervisory investigators on leave pending investigation, however, HLC placed Waite himself on paid administrative leave. *Id.* Waite eventually returned to work, but was once again placed on leave "following an incident involving damage to a company car, a situation he believes was orchestrated by" Defendants as retaliation for his complaints. *Id.* (¶ 29).

Ten months later, in November 2023, Waite returned to work at HLC. *Id.* (¶ 30). But Waite did not return to his same investigative duties. *Id.* at PageID.167-68 (¶ 30). Instead, Waite was tasked with administrative duties, including "refueling and washing agency vehicles" and "routine filing and administrative work." *Id.* at PageID.168 (¶ 30). Although Waite requested to be reassigned to the licensing department so that he would not need to work with Fears or Nishigata, his request was denied. *Id.* This "ostracization" upon his return led Waite "to file three additional internal complaints with HLC." *Id.* He ultimately "terminate[d] his employment under duress." *Id.*

Arising from these alleged events, in August 2023, Waite filed suit against HLC and supervising investigators Fears, Nishigata, and Catherine Fontaine. The FAC currently before the Court advances nine claims for relief:

3

(1)  sexual orientation discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

(2)  race and national origin discrimination under Title VII;

(3)  sexual orientation discrimination under Hawaiʻi Revised Statutes (HRS) § 378-2;

(4)  race and national origin discrimination under HRS § 378-2;

(5)  violation of equal protection based on sexual orientation discrimination under the Fourteenth Amendment to the United States Constitution and article I, section 5 of the Hawaiʻi Constitution;

(6)  violation of equal protection based on race and national origin discrimination under the Fourteenth Amendment to the United States Constitution and article I, section 5 of the Hawaiʻi Constitution;

(7)  retaliation under Title VII and HRS § 378-2;[1]

(8)  a hostile work environment under Title VII and HRS § 378-2; and

(9)  negligent hiring, training, supervision, and retention under Hawaiʻi state law. ECF No. 28.  The fifth, sixth, and ninth claims are brought only against Defendant HLC. The remaining claims are brought against all Defendants—that is, against HLC and all the individual defendants, Fears, Nishigata, and Fontaine.

---

[1]    The FAC does not clearly state the basis for the retaliation claim.  At the hearing on this motion, however, counsel for Waite clarified that the retaliation claim is brought under Title VII and HRS § 378-2.  Accordingly, the Court construes it as such here.

**B.      Defendants' Motion for Judgment on the Pleadings**

Defendants now move for judgment on the pleadings, arguing that the facts advanced in the FAC do not suffice to state any claim for relief.  ECF No. 32.  In opposition, Waite advances counterarguments only for certain claims.  ECF No. 42.  He requests leave to amend any claims found lacking.  *Id.* at PageID.270-73.  The Court held a hearing on the motion on November 5, 2024.  ECF No. 52.

## DISCUSSION

**A.      Legal Standard for Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is properly granted "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up).

Rule 12(c) motions are analyzed under substantially the same standard as 12(b)(6).  *Id.*  Under that standard, the Court must assess whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Setting aside "labels and conclusions," the complaint's factual allegations must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). And while "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof" is "improbable," the complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 556-57; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014).

### B.    Individual Defendants

Defendants first seek dismissal of the claims against the individual defendants. Waite's Title VII and HRS § 378-2 claims are brought against the individual defendants in both their official and personal capacities. In his opposition to Defendants' motion, Waite does not respond to any of Defendants' arguments regarding the individual defendants.

At the hearing on Defendants' motion, Waite made reasonable concessions. He first acknowledged that the official capacity suits are duplicative of those brought against Defendant HLC, for official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also, e.g., Raymond v. County of Kauaʻi*, Civ. No. 15-00212, 2017 WL 2815059, at *5 (D. Haw. June 26, 2017) (dismissing official capacity suits against police officers as redundant of those against police department). Waite separately conceded that there is no individual liability for discrimination, retaliation, or a hostile work environment under HRS § 378-2 here, and

6

so the state law claims cannot be brought against the individual defendants in their personal capacities. *See, e.g.*, *Lum v. Kaua'i Cnty. Council*, 358 F. App'x 860, 862 (9th Cir. 2009) ("[T]here is no individual liability under Hawaii Revised Statutes § 378-2(1)(A) and (2)."); *Beckmann v. Ito*, 430 F. Supp. 3d 655, 686 (D. Haw. 2020) ("[HRS] § 378-2(a)(1)-(2) applies to conduct by employers, not conduct by individual employees.").[2]

Indeed, at the hearing, Waite contested only one aspect of Defendants' motion as to the individual defendants. He argued that individual liability *does* lie under Title VII. This contention, however, was not raised in the briefs, and so Waite has forfeited it. In any case, the Court agrees with Defendants that Title VII does not authorize individual liability for employees. *See, e.g.*, *Lum*, 358 F. App'x at 862 ("[T]here is no individual liability under Title VII.").

For these reasons, all claims against individual defendants Fears, Nishigata, and Fontaine are DISMISSED with prejudice.

### C.    Defendant Honolulu Liquor Commission

Waite's claims against HLC are also largely deficient, but the Court concludes that leave to amend is appropriate for certain of these claims.

---

[2]    HRS § 378–2 "proscribe[s] individual employee conduct only to the extent that the employee aids, abets, incites, compels, or coerces discriminatory conduct." *Lales v. Wholesale Motors Co.*, 133 Hawai'i 332, 349, 328 P.3dd 341, 358 (2014) (citing HRS § 378–2(3)). The FAC does not allege that this subsection applies to the individual defendants' conduct here, and because Waite has conceded that state law does not permit individual liability in this case, the Court need not take the matter up.

1.  Defendants challenge Waite's Title VII claims against HLC, which encompass those for sexual orientation, race, and national origin discrimination, retaliation, and a hostile work environment.

Defendants argue that the Title VII claims fail to allege two elements:  (1) an adverse employment action, and (2) that similarly situated individuals outside the plaintiff's protected class were treated more favorably.  The elements of a prima facie Title VII disparate treatment claim are (1) belonging to a protected class, (2) qualification for the position in question, (3) subjection to an adverse employment action, and (4) that similarly situated individuals outside of the protected class were treated more favorably.  *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018).

The parties dispute, in particular, whether either of two alleged employment actions constitute an adverse employment action for the purposes of Title VII disparate treatment:  (1) Waite's placement on administrative leave with pay and (2) his changes in responsibilities upon his return to the office.[3]  Defendants admit that the Ninth Circuit has not addressed whether leave with pay can constitute an adverse employment action, but they cite cases from other circuits holding that it does not.  *See, e.g.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015); *Nichols v. S. Ill. Univ.-*

---

[3]     While Waite's argument on adverse employment actions is couched within the § 1983 section of his opposition, it applies with equal force to the Title VII claims.

*Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007); *Michael v. Caterpillar Fin. Servs. Corp.*, 496

F.3d 584, 594 (6th Cir. 2007); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006); *Singletary v.*

*Miss. Dep't of Corr.*, 423 F.3d 886, 891-92 (8th Cir. 2005).  Since those cases were decided,

however, the United States Supreme Court has held that to constitute an adverse

employment action for the purposes of Title VII disparate treatment, an action need not

be "materially" adverse—it must merely be harmful in some manner.  *Muldrow v. City*

*of St. Louis*, 601 U.S. 346 (2024).  In *Muldrow*, the Court vacated an Eighth Circuit

decision holding that the plaintiff had not suffered an adverse employment action as a

matter of law where she was transferred to another position with the same pay and

rank, but in a less prestigious division with more administrative work and a less

regular, weekend schedule.   *Id.* at 359.  The Court concluded that if proved, those

allegations cleared the bar of showing "some harm" respecting a term or condition of

employment with room to spare.  *Id.* at 350, 359.  In light of that holding, lower courts

have recognized that administrative leave—even with pay—may indeed be an adverse

employment action.  *See, e.g.*, *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643,

at *4 n.3 (3rd Cir. Aug. 9, 2024) ("*Muldrow* arguably abrogated *Jones* so that a suspension

with pay might, under some circumstances, constitute an adverse employment

action."); *Smith v. Crittenden County*, No. 22-cv-00042, 2024 WL 2194847, at *12 n.178

(E.D. Ark. May 15, 2024) (noting that it is unlikely that *Singletary* and similar Eighth

Circuit cases that suggest suspension with pay is not an adverse employment action

survive *Muldrow*).  Additionally, Waite's alleged changes in responsibilities upon his

return to the office—namely, his being "prevented from resuming" investigative

responsibilities and instead assigned administrative tasks, such as refueling and

washing agency vehicles, ECF No. 28, at PageID.167-68—are sufficient to plausibly

allege an adverse employment action.  *See Muldrow*, 601 U.S. at 359 (holding that a

harmful transfer to another position can qualify as an adverse employment action).

Waite's allegations are, therefore, apparently sufficient to clear *Muldrow*'s fairly low bar

for alleging an adverse employment action—and Defendants have not argued

otherwise.  At least at this stage, then, the Court will not dismiss Waite's Title VII

disparate treatment claim on the ground that the FAC has failed to allege an adverse

employment action.

Waite does not, however, argue anywhere in his opposition that the FAC alleges

the other challenged element of a disparate treatment claim—that similarly situated

individuals outside of his protected class were treated more favorably.  And the Court

agrees that it does not do so.  For that reason, Waite's Title VII disparate treatment

claims against all Defendants are DISMISSED.

Waite does argue that he should be permitted leave to amend his disparate

treatment claims to address this deficiency.  He suggests that if given leave to amend,

he could allege the following similarly situated persons:  Fears and Nishigata, who had

complaints filed against them and yet were not placed on administrative leave, and

another terminated investigator, Joseph Rangel, who both filed complaints and had

complaints filed against him and was then placed on administrative leave.  None of

these persons appear to meet the similarly situated element, however.  For one, Fears

and Nishigata are not similarly situated to Waite in a highly material sense, as they did

not file complaints, but had complaints filed against them.  For another, Rangel was not

treated more favorably than Waite, as he was also placed on administrative leave.

Waite also suggests that the anticipated testimony of HLC employee Anna Hirai would

establish that only one other HLC employee who filed a complaint was placed on

administrative leave.[4]  But any testimony to that effect still would not offer a similarly

situated individual who was treated more favorably; identifying a person who was

treated *similarly* is not the same as identifying a similarly situated person who was

treated *differently*.  That said, because it is theoretically possible that Waite could

address this deficiency in his complaint, the Court will permit Waite leave to amend his

disparate treatment claim, with the caveat that he should only do so if he can indeed

---

[4]      Hirai's testimony in another recent equal protection challenge to HLC's conduct,
*Scarlet v. Honolulu Liquor Commission*, Civ. No. 21-00457 (D. Haw.), does not appear to
support Waite's representations regarding Hirai's expected testimony.  During the trial
in that case, Hirai testified that it is the practice of HLC to give complaining witnesses
the option to be placed on leave with pay and that she could not think of an instance in
which someone had declined it.  And she named at least two other complaining
witnesses whom HLC had placed on paid leave.  Transcript of Non-Jury Trial – Day 2,
at 2-142 to 2-143, *Scarlet v. Honolulu Liquor Commission*, Civ. No. 21-00457 (D. Haw.), ECF
No. 276, at PageID.8928-29.

identify a similarly situated person outside of his protected class who was treated more favorably than him.

That does not dispose of all of Waite's Title VII claims. The elements of retaliation and a hostile work environment differ from those of disparate treatment. To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). To allege a hostile work environment claim, on the other hand, an employee must allege that (1) the defendants subjected them to verbal or physical conduct based on their protected category, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Defendants' motion only contests one element of the Title VII retaliation claim: whether the FAC alleges an adverse employment action.[5] As with the disparate treatment claims, however, this element is plausibly alleged. *See, e.g., Dahlia v. Rodriguez*, 735 F.3d 1060, 1078-79 (9th Cir. 2013) (holding in First Amendment context

---

[5] Defendants gear this argument to the adverse employment action element of the disparate treatment claims. *See* ECF No. 32-1, at PageID.211-13. Even construing Defendants' argument to apply to the retaliation claim as well, it fails for the reasons explained above.

that placement on paid administrative leave can constitute an adverse employment

action, and noting that in the parallel Title VII context, courts have found "far less

serious actions" constituted adverse employment actions); *Ray*, 217 F.3d at 1243-44

(reduction in workload constituted an adverse employment action because it was

reasonably likely to deter from engagement in protected activity); *Burlington N. & Santa*

*Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (retaliatory reassignment of responsibilities

may constitute adverse employment action).

 Because Defendants do not challenge anything else about the Title VII retaliation

or hostile work environment claims, they have not carried their burden as to those

claims.  For those reasons, Defendants' motion is DENIED IN PART as to the retaliation

and hostile work environment Title VII claims against HLC.

 That Defendants have not carried their burden at this stage, however, does not

mean these claims are sufficiently alleged.  In any amended complaint, Waite may wish

to revisit and expand upon his allegations, or they may not survive a future motion.

*See*, *e.g.*, *Manatt v. Bank of America,* 339 F.3d 792, 798-99 (9th Cir. 2003) (finding no

actionable hostile work environment where plaintiff's supervisor and colleagues made

racist jokes, but only directed them at plaintiff a couple of times, once ridiculed

plaintiff's accent, and once mocked the appearance of Asians).

//

//

2.  Turning to Waite's state law claims, Defendants argue that all fall short for a single reason:  Waite failed to comply with Hawai'i's statutory notice requirement for lawsuits against the county.

HRS § 46-72 requires a plaintiff, before suing for negligence or official county action, to provide written notice to a designated county representative, within two years of an injury occurring, "of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed."  *See also* Rev'd Charter of the City and County of Honolulu § 13-111 (2023) (similar).  Waite concedes that he did not meet the formal notice requirements, but nonetheless contends that they do not bar his suit because the county had actual notice of the lawsuit.  He cites *Surnow v. Buddemeyer*, 379 F. Supp. 3d 1086, 1090-91 (D. Haw. 2019), for the principle that Hawai'i's notice requirements should be liberally construed.

Where a plaintiff provides some form of written notice to the county, but that notice does not comply with the technicalities of HRS § 46-72, the Hawai'i Supreme Court has held that the plaintiff's claims can still proceed so long as the municipality has not been prejudiced.  *Oakley v. State*, 54 Haw. 210, 216-17, 505 P.2d 1082, 1186 (1973).  Where a plaintiff provides no written notice at all, however, the plaintiff's claims are barred regardless of whether the municipality has suffered prejudice.  *Id.*

Here, the parties contest whether either of two forms of notice serve as written notice to the county: his internal complaints with HLC and his Equal Employment Opportunity Commission (EEOC) complaint. *See* ECF No. 28, at PageID.167 (¶ 28) (alleging Waite filed a complaint with HLC's Administrative Services Coordinator, which resulted in his placement on paid administrative leave); *id.* at PageID.168 (¶ 30) (alleging that Waite filed "three additional internal complaints" with HLC after his return from administrative leave); *id.* at PageID.165 (¶ 11) (alleging that on March 2, 2023, Waite filed a charge of discrimination with the EEOC). The parties each rely on *Surnow*, a Hawaiʻi federal district court case, to support their respective positions.

In *Surnow*, counsel for the plaintiff sent a letter to Corporation Counsel for Hawaiʻi County, but did not technically file a notice with the County Clerk as required by the Hawaiʻi County Charter. 379 F. Supp. 3d at 1091-92. Nor did the letter request a specific dollar amount in damages as required by statute. *Id.* In spite of these technical deficiencies, the court found the letter, which "was written, and reasonably understood to be, in anticipation of litigation," to be sufficient, for it "provided notice to appropriate County officials when it was received by the Hawaii Office of the Corporation Counsel." *Id.* at 1092. And the County had put forth no evidence that the letter's lack of technical compliance prejudiced "its ability to investigate or prepare for litigation." *Id.*

Waite generally contends that, as in *Surnow*, Defendants here had actual notice of his claims. But at present, the Court does not have sufficient information about who (if

anyone) allegedly received notice and what claims (if any) were encompassed by any

such notice.  The Court therefore cannot determine whether any alleged notice (such as

Waite's EEOC complaint) was "written, and reasonably understood to be, in

anticipation of litigation," whether it made it into the hands of the appropriate county

officials, and whether it provided sufficient notice of the state law claims Waite now

seeks to advance in court.  For their part, Defendants have not offered any argument

that the county in this case was prejudiced by Waite's lack of technical compliance.

Because the Court cannot conclude that there was no written notice at this stage,

Defendants' motion is DENIED with respect to Waite's state law claims against HLC—

that is, the claims contained in counts three, four, seven, eight, and nine.  *See Fatai v.

City & County of Honolulu*, No. 19-cv-00603, 2021 WL 2941549, at *15-16 (D. Haw. July 13,

2021) (declining to dismiss state law claims for failure to comply with HRS § 46-72

because the court could not consider evidence outside the pleadings to resolve whether

plaintiff had provided timely notice to the county), *recons. granted on other grounds*, 2022

WL 2669530 (July 11, 2022).  Waite is cautioned, however, that his state law claims may

not survive a future summary judgment motion if the evidence does not ultimately

show that the county received adequate written notice of his claims.

3.  Defendants next tee up Waite's state constitutional claims.  They contend that

there is no private cause of action under article I, section 5 of the Hawai'i Constitution.

Courts in this district have concurred, at least to the extent the claims are brought for

16

money damages.  *See, e.g., Denis v. Ige*, 557 F. Supp. 3d 1083, 1095-96 (D. Haw. 2021)

(distinguishing private causes of action for damages for violations of rights under the

state constitution, which are not recognized, from claims for declaratory and injunctive

relief); *Kaahu v. Randall*, Civ. No. 14-00266, 2018 WL 472996, at *7 (D. Haw. Jan. 18, 2018)

(cataloging cases).  And because Waite does not respond to Defendants' contention as to

any form of relief, he has forfeited any counterargument.

Moreover, to the extent that Waite believes his state constitutional claims are

cognizable under 42 U.S.C. § 1983, he is incorrect.  *See, e.g., Puana v. Kealoha*, 587 F. Supp.

3d 1035, 1055 n.7 (D. Haw. 2022) ("To the extent that Plaintiffs bring § 1983 claims based

on alleged violations of the Hawaiʻi Constitution, those claims fail because state

constitutional claims are not covered by Section 1983." (cleaned up)).

For those reasons, Waite's state constitutional claims against HLC, contained in

counts five and six of the FAC, are DISMISSED with prejudice.

4.  Finally, Defendants challenge Waite's claims brought under the federal

constitution.  To state a § 1983 claim "for a violation of the Equal Protection Clause of

the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an

intent or purpose to discriminate against the plaintiff based upon membership in a

protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  Beyond

proof of discriminatory intent, "there is no specific test that an equal protection plaintiff

is required to meet*."  Clark v. Wash. State Dep't of Health*, No. 23-cv-01558, 2024 WL

2781951, at \*7 (W.D. Wash. May 30, 2024) (quoting *FDIC v. Henderson*, 940 F.2d 465, 471

(9th Cir. 1991)).  Here, the FAC sets forth factual allegations that investigators Fears and

Nishigata made homophobic comments, asked Waite to act as a "translator for gay

patrons," mocked his accent, and more.  *E.g.*, ECF No. 28, at PageID.166-67 (¶¶ 18-27).

But the FAC does not sufficiently allege *Monell* liability.  To bring an equal

protection claim against a municipality under § 1983, a plaintiff must also meet the

standards set forth in *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  First, a

municipality can be liable when it or a person with final policymaking authority within

the municipality expressly enacts or authorizes a policy respecting a challenged action,

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986), including by ratifying a

subordinate's conduct and the basis for it, *Ellins v. City of Sierra Madre*, 710 F.3d 1049,

1066-67 (9th Cir. 2013).  Second, a municipality can be liable for a custom that, although

not expressly enacted, is "so permanent and well settled" that it operates with the force

of law.  *Monell*, 436 U.S. at 691.  Third, a municipality can be liable for failing to train its

employees when such failure amounts to deliberate indifference toward the rights of its

inhabitants.  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  Under any theory, a

plaintiff must also allege that a policy, custom, or failure to train actually caused a

municipality's employee to commit the constitutional deprivation.  *Id.* at 390; *Monell*,

436 U.S. at 694.  A municipality cannot be held liable "solely because it employs a

tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphases omitted).

While Waite states that his supervisors' actions were "carried out with the knowledge and tacit approval of senior officials," ECF No. 42, at PageID.264, he points to no facts in the FAC that back this up. Similarly, while Waite suggests that HLC has a custom of discrimination in that it has a practice of failing to address complaints, the FAC alleges no instances of this conduct aside from Waite's own experiences.

In its current form, the FAC also does not adequately allege a failure to train theory. The FAC does specifically allege—albeit in an unincorporated section addressing a different claim—that HLC failed to train its employees "how to properly handle interactions and relations with the LGTBQ+ community," notwithstanding that it was required to do so as part of a "2002 settlement." ECF No. 28, at PageID.176 (¶ 70). As Defendants argue, to constitute deliberate indifference, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 61 (2011). It is not enough to merely point to something the city "could have done" to prevent injury. *Canton*, 489 U.S. at 392. Rather, a "pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Connick*, 563 U.S. at 62 (internal quotation marks omitted). The FAC does not provide any detail about the omitted training or settlement such that the Court could infer that HLC's failure to implement it constituted deliberate indifference,

19

nor does the FAC appear to allege that any such failure actually caused the alleged constitutional violation here.

In any amended complaint, Waite will need to offer a more robust failure to train theory. In *Connick*, the Supreme Court explained that a municipality must have "notice that a course of training is deficient in a *particular respect*." *Id.* (emphasis added). In that case, the plaintiff sought to hold the local government civilly liable for a *Brady* violation, and to that end, pointed to a history of several previous *Brady* violations by prosecutors in his district. *Id.* But the Court distinguished those prior violations as not involving a failure to disclose the particular types of evidence at issue in his case—namely, physical or scientific evidence—and it therefore determined that those prior incidents could not have put the government "on notice that specific training was necessary to avoid this constitutional violation." *Id.* at 62-63. Hence, to allege a plausible failure to train theory, Waite will need to offer far more particulars on any prior instances of LGBTQ+ discrimination, how those occurrences put HLC on notice that it needed to offer a particular type of training, what specific type of training HLC lacks, and how the failure to offer that training actually caused Waite's injuries here.[6]

---

[6]     At least as currently alleged, this is not the rare case in which a "single-incident" of a constitutional violation is sufficient to hold the municipality liable. *Connick*, 563 U.S. at 63. "In *Canton*, the Court left open the possibility that, in a narrow range of

Moreover, as written, the FAC does not appear to contain any *Monell* facts for the race and national origin discrimination claims at all.

For these reasons, Waite's § 1983 equal protection claims brought under the federal constitution are also DISMISSED without prejudice.

### D.    Leave to Amend

All that is left is for the Court to parse out which claims Waite should have an opportunity to amend.  *See Crosby v. Wells Fargo Bank,* 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014) ("Courts have discretion to grant Rule 12(c) motions with leave to amend."). For those claims for which Waite has made legal concessions, further factual amendment would not cure the identified—and conceded—legal deficiencies, and so further leave to amend is not warranted.  *See, e.g.*, *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (denial of leave to amend warranted where amendment would be futile); *Lee v. Retail Store Emp. Bldg. Corp.*, No. 15-cv-04768, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver" of their claim).  For those that

---

circumstances"—such as those where a city arms its police officers and deploys them without training on the constitutional limits of the use of deadly force—"a pattern of similar violations might not be necessary to show deliberate indifference."  *Id.* (cleaned up).  The employment discrimination in this case, at least as currently alleged, does not rise to the level of a "highly predictable consequence" of a failure to train on LGBTQ+ discrimination, *id.* at 64—particularly where the FAC does not even allege what that training should have entailed.

merely have factual deficiencies, on the other hand, the Court finds that justice requires leave to amend.

Accordingly, leave to amend is GRANTED IN PART. Waite's claims against the individual defendants are dismissed with prejudice, and Waite may not amend them. His deficient claims against HLC, however, are dismissed without prejudice and with leave to amend, with the exception of his state constitutional claims. In other words, Waite is granted leave to amend his Title VII disparate treatment claims and his § 1983 claims brought under the federal constitution.

If Waite chooses to file an amended complaint—which should be titled "Second Amended Complaint"—he must do so by December 27, 2024, and it must cure the deficiencies identified above.

## CONCLUSION

For the foregoing reasons, the Court:

(1)  GRANTS Defendants' motion with respect to all claims against individual defendants Jacob Fears, Glen Nishigata, and Catherine Fontaine, and DISMISSES the individual defendants with prejudice;

(2)  GRANTS Defendants' motion with respect to the state constitutional claims against the Honolulu Liquor Commission, and DISMISSES those claims with prejudice;

(3)  GRANTS Defendants' motion with respect to the Title VII disparate treatment and § 1983 federal constitutional claims against the Honolulu Liquor Commission, and DISMISSES those claims without prejudice;

(4)  DENIES Defendants' motion with respect to the following claims against the Honolulu Liquor Commission:  Title VII retaliation, Title VII hostile work environment, HRS § 378-2, and negligent hiring, training, supervision, and retention; and

(5)  GRANTS Plaintiff Jhumar Ray Waite partial leave to amend his complaint; namely, it grants leave to amend the Title VII disparate treatment and § 1983 federal constitutional claims against the Honolulu Liquor Commission.

If Waite elects to file an amended complaint, he must comply with the following requirements:

(1)    Waite's deadline to file an amended complaint is December 27, 2024;

(2)    Waite's amended complaint should be titled "Second Amended Complaint"; and

(3)    Waite must cure the deficiencies identified above.

//

//

//

//

//

//

IT IS SO ORDERED.

DATED:  November 21, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge